UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER FARMER, individually and on behalf of all other similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>BARKBOX, INC.<br><br>                      Defendant. | Case No. 5:22-cv-01574-SSS-SHKx<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION [Dkt. 18] AND DISMISSING PLAINTIFF'S FIRST CAUSE OF ACTION WITH LEAVE TO AMEND [Dkt. 17].** |

Before the Court are Defendant BarkBox, Inc.'s motions to (1) compel individual arbitration of Plaintiff Amber Farmer's claims [Arb. Mot. (Dkt. 18); Arb. Opp. (Dkt. 23); Arb. Reply (Dkt. 27)] or, alternatively, to (2) dismiss the complaint in full [MTD (Dkt. 17); MTD Opp. (Dkt. 24); MTD Reply (Dkt. 26)]. Both motions are fully briefed and were taken under submission without a hearing.

The motion to compel arbitration is **DENIED**. The motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Parties are directed to Part IV for further instructions in light of this order.

## I. BACKGROUND

BarkBox is an online pet supply retailer, offering monthly subscription boxes as well as certain pet products for individual sale. In or around January 2021, Plaintiff purchased a six-month subscription through BarkBox's website. After this initial period elapsed, BarkBox automatically renewed her subscription and charged Plaintiff for an additional six months of boxes. BarkBox renewed Plaintiff's subscription twice more before she was able to access her BarkBox account and cancel her subscription in August of 2022. [Compl. (Dkt. 1) at ¶¶ 30-33].

Plaintiff alleges that BarkBox failed to adequately disclose its automatic renewal policy at the time of purchase, leading her to "believe[] that she was signing up for a single, non-renewing subscription…purchasing a total of [six] boxes." [Compl. at ¶ 30]. As a result, she was charged for twelve additional boxes of pet products that she did not ask for and did not want.

She brings this complaint on behalf of herself and a putative class of all California consumers who have purchased a BarkBox subscription during the applicable statutory period. [Compl. at ¶ 36]. She alleges that BarkBox's website fails to inform consumers of its automatic-renewal policy in the "clear and conspicuous" manner required under California's Automatic Renewal Law

(ARL). Plaintiff seeks injunctive relief and restitution under California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumer Legal Remedies Act (CLRA) to address BarkBox's continuing failure to comply with the ARL.

## II. MOTION TO COMPEL ARBITRATION

### A.   Legal Standard

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where one party "claims never to have agreed to" the contract requiring arbitration, the court must begin by addressing the "threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys Mtn. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (emphasis in original).

Ordinary state-law principles governing contract formation control this analysis. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To form a contract under California law,[1] "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). The party moving to compel arbitration bears the burden of proving a valid arbitration agreement exists by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

---

[1] Although BarkBox's Terms state that they "shall be governed and interpreted according to the laws of the State of New York," the parties rely entirely on California law in their briefing and BarkBox indicates its assent to arbitration in California. [Arb. Mot. at 7 n.1]. The Court therefore applies California contract law.

**B.     Discussion**

BarkBox moves to compel individual arbitration of Plaintiff's claims based upon the arbitration provision contained in its Terms and Conditions. [Arb. Mot. at 13-17]. BarkBox maintains that its website design provided Plaintiff adequate inquiry notice of its Terms, and that Plaintiff assented to them when she made her initial subscription purchase. Plaintiff denies that BarkBox's website provided her with either actual or constructive notice sufficient to bind her to the arbitration provision.

In order to purchase a BarkBox subscription, the customer visits the website and begins by answering questions about her pet. She then selects a subscription term and provides her mailing address. She then arrives at a final page where she is required to enter her billing information. It is only on this last payment screen that BarkBox provides the customer with any notice of its Terms. As reflected in the image below, small grey text above the "BUY NOW" button, BarkBox informs the reader that by clicking 'Buy now' you are committing to the length of your BarkBox plan and agree to our <u>Terms & Privacy Policy</u>." These underlined portions are printed in darker blue and contain hyperlinks to the contract where the arbitration provision appears. [Compl. at ¶¶ 19-28].



The customer is not required to click the hyperlinks or affirmatively indicate that she has read the Terms in order to complete her purchase.

The parties agree that BarkBox's contract constitutes a "modified clickwrap" agreement. As the Ninth Circuit explained in *Oberstein v. Live Nation Entertainment, Inc.*, such an agreement may be enforced where (1) "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound," and (2) "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." 60 F.4th 505, 515 (9th Cir. 2023).

The first prong of the test is met only where the terms are presented so as to "to capture the…attention and secure [the] assent" of the "reasonably prudent user." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022), citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 n.1 (9th Cir. 2014). Some of the factors considered in evaluating whether a textual notice is sufficiently conspicuous under California law include the "size of the text,"

"color of the text as compared to the background it appears against," the "proximity" of the text to "any box or button the user must click to continue use of the website," and "whether other elements on the screen clutter or otherwise obscure the textual notice." *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 474 (2021). Because "online providers have complete control over the design of their websites," the "onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Id.*, citing *Nguyen*, 763 F.3d at 1179.

In this Court's view, BarkBox's website design does not satisfy the objective reasonableness standard articulated by the Ninth Circuit and refined in the fact-specific analyses of its fellow district courts. As described above, BarkBox presents the customer with a hyperlink to its Terms only once over the course of her transaction. That lone notice is printed small, light-colored font at the bottom of a page crowded with other graphics and text more likely to attract the user's attention. BarkBox's claim that its website provides a hyperlink to its terms in "the same size as other text on the page" [Arb. Reply at 9] is contradicted by the screenshots provided in Plaintiff's complaint and reproduced above. [Compl. at ¶ 26].[2]

The two cases in which the Ninth Circuit enforced modified clickwrap agreements that BarkBox characterizes as "indistinguishable" from its own are, in fact, distinguishable. [Arb. Mot. at 14]. In *Dohrmann v. Intuit, Inc.*, the Ninth Circuit found Intuit's notice of its terms sufficient because the text containing the hyperlink was the "only text on [that] webpage in italics" and –

---

[2] These materials are properly subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (the court may notice materials cited in and attached to the complaint, so long as their authenticity is not disputed).

importantly – because the relevant webpage was otherwise "relatively uncluttered." 823 F. App'x 482, 484 (9th Cir. 2020).  And in *Lee v. Ticketmaster LLC,* Ticketmaster's website provided a hyperlink to its Terms both at the time the user signed into his account and once more before he completed his purchase. 817 Fed. App'x. 393, 394-95 (9th Cir. 2020).  The district court opinions BarkBox cites [*see* Arb. Mot. at 14-17] concern modified clickwrap agreements which also differ from BarkBox's in dispositive ways. *See Sellers*, 73 Cal.App.5th at 481(noting that "even minor differences in one or more of the criteria may be sufficient to render a textual notice insufficient.").

      The Court also rejects BarkBox's suggestion that a less demanding conspicuous-notice standard should apply because the transaction here concerned a potentially "ongoing" relationship with BarkBox.  [Arb. Reply at 9].  As the California Supreme Court noted when presented with a similar motion to compel arbitration of ARL-related claims in *Sellers v. JustAnswer LLC*, the Legislature's very enactment of that statute "acknowledged that consumers often do *not* expect to enter into an ongoing relationship" with a business under circumstances like these. *Sellers*, 73 Cal.App.5th at 471-72.

      Because there is no enforceable agreement to arbitrate between Plaintiff and BarkBox, BarkBox's motion to compel arbitration is **DENIED**.

### III.  MOTION TO DISMISS

      BarkBox asks that the Court, should it decline to order the case to arbitration, dismiss each of Plaintiff's three causes of action.  It argues (1) that Plaintiff's factual allegations are insufficient to support her claims and (2) that Plaintiff has not demonstrated that she is entitled to either form of equitable relief sought in her complaint.  Plaintiff's first cause of action is **DISMISSED** with leave to amend.  The Court **DENIES** BarkBox's motion as to Plaintiff's second and third causes of action.

A.  **Sufficiency of Plaintiff's Factual Allegations**

   i.  **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an entire complaint or individual causes of action and prayers for relief within a complaint for failure to state a claim upon which relief may be granted.

Evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any ambiguities must be resolved in favor of the pleader. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973). However, dismissal is appropriate where the court finds that plaintiff has not alleged a cognizable legal theory or does not provide sufficient facts to support that theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

   ii.  **Discussion**

Plaintiff's three causes of action all stem from BarkBox's alleged failure to disclose its automatic renewal provision in the manner required by California's Automatic Renewal Law ("ARL"). As an initial matter, BarkBox contends that Plaintiff's claims fail because Plaintiff has failed to allege any underlying ARL violation. The Court disagrees.

The ARL provides that a business offering products or services in California must present any "automatic renewal offer terms" or "continuous service offer terms" in a "clear and conspicuous manner," "before the subscription or purchasing agreement is fulfilled," and "in visual proximity…to the request for consent to the offer." Cal. Bus. & Prof. Code §17602. Under the statute, a notice is "clear and conspicuous" if it is presented "in larger type than

the surrounding text," or "in contrasting type, font, or color to the surrounding text of the same size," or if it is "set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601.  Businesses are also prohibited from "charg[ing] the consumer's credit or debit card...for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."  Cal. Bus. & Prof. Code § 17602.

Neither of the notices BarkBox provides on its website so plainly satisfies the ARL's "clear and conspicuous" standard as to support dismissal of Plaintiff's claims at this early stage of the litigation.  [*See* MTD at 21, citing Compl. at ¶ 22, 26].  The first of these notices appears on the page where the customer is asked to choose the length of her subscription.  There, the user is explicitly informed that BarkBox's plans "automatically renew."  But the message is printed in text that is smaller and lighter in color than all other information on the page, and it does not in any other way call attention to itself. An image of this page is reproduced below:



BarkBox's alternative argument that the notice of automatic renewal provided in its hyperlinked Terms & Privacy Policy satisfies the ARL necessarily fails, for the reasons set forth above with respect to BarkBox's motion to compel arbitration.

As Plaintiff acknowledges, the ARL does not itself provide a private right of action. *Mayron v. Google LLC*, 269 Cal. Rptr. 3d 86, 88-91 (2020). Instead, courts applying California law have recognized that a "consumer who has been harmed by a violation of the ARL may bring a claim pursuant to other [California] consumer protection statutes, including the FAL, CLRA, and UCL." *Arnold v. Hearst Mag. Media, Inc.*, No. 19-1969, 2021 WL 488343, at *6 (S.D. Cal. Feb. 10, 2021); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018).

Plaintiff brings claims under all three statutes. The Court considers the sufficiency of her allegations in support of each below.

*First Cause of Action*

California's FAL makes it unlawful for any person to engage knowingly in unfair or misleading advertising and provides a private cause of action for "[a]ny person who has suffered injury in fact and has lost money or property as a result of a violation of [the FAL]." Cal. Bus. & Prof. Code §§ 17500, 17535. Although Plaintiff's brief in opposition indicates that she brings her first cause of action under this provision [MTD Opp. at 22], her complaint does not so much as reference the FAL. Neither the pleadings nor Plaintiff's briefing describe the necessary elements of her FAL claim or provide specific facts in support. As such, her first cause of action is **DISMISSED** with leave to amend.

*Second and Third Causes of Action*

Plaintiff brings her second and third causes of action under the UCL and CLRA, respectively.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. "A person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has a cause of action under the UCL. Cal. Bus. & Prof. Code §17204.

Plaintiff's allegations as to BarkBox's ARL violations plead an "unlawful" business action are sufficient to maintain her UCL claim, and the charges she incurred for two unwanted subscription renewals constitute an injury in fact traceable to BarkBox's conduct. Plaintiff has pled both elements of her second cause of action.

Similarly, the CLRA prohibits businesses from "represent[ing] that goods or services have sponsorship, characteristics, or benefits that they do not have," whether through "fraudulent omissions and fraudulent affirmative misrepresentations." Civ. Code § 1770(a)(5); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013). A fraudulent omission claim arises where a defendant did not disclose some fact that it was otherwise "obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Because the ARL creates an obligation to disclose automatic renewal terms, BarkBox's alleged failure to satisfy that obligation supports Plaintiff's cause of action supports a claim for fraudulent omission under the CLRA. *See, e.g., Price v. Synapse Grp., Inc.*, No. 16-01524, 2017 WL 3131700 at *8 (S.D. Cal. July 24, 2017); *see also Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 183-84 (S.D.N.Y. 2021) (applying California law and collecting California appellate court decision in support).

**B.   BarkBox's Additional Arguments in Support of Dismissal**

Alongside the Rule 12(b)(6) arguments outlined above, BarkBox advances several alternative procedural grounds for dismissal of Plaintiff's complaint. The Court addresses each below.

      **i.     The CLRA's notice-and-cure requirement is inapplicable to Plaintiff's claim.**

BarkBox contends that Plaintiff's CLRA claim is barred because she did not provide BarkBox notice and an opportunity to cure the alleged violations before filing suit. But the CLRA's notice-and-cure requirement applies only where the plaintiff seeks monetary damages. Because Plaintiff's CLRA claim explicitly contemplates only injunctive relief [Compl. at ¶ 67], BarkBox's argument is meritless. *Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916, 918 (9th Cir. 2017); *see also Roper v. Big Heart Pet Brands*, Inc., 510 F. Supp. 3d 903, 918-19 (E.D. Cal. 2020).

      **ii.     Plaintiff has standing to pursue injunctive relief.**

Next, BarkBox asserts that Plaintiff has not alleged standing as is required to support her claim(s) for prospective injunctive relief.

In order to establish standing to pursue an injunction, a litigant must "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [s]he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

BarkBox claims that Plaintiff cannot establish a likelihood of future injury redressable by injunctive because (1) she does not allege any future intent to purchase a BarkBox product, and (2) now that she is aware of BarkBox's auto-renewal policy, she will never again suffer the kind of confusion the ARL seeks to prevent.

BarkBox's first argument is foreclosed by Plaintiff's allegation that she would like to buy BarkBox's products for her dog but will not do so unless and until she "could feel sure that" BarkBox would not "illegally auto-renew her." [Compl. at ¶ 34]. *See Ingalls v. Spotify USA, Inc.*, No. 16-03533, 2017 WL 3021037 at *6-7 (N.D. Cal. July 17, 2017) (plaintiff's statement of his "willingness to consider a future [subscription] purchase" from defendant, if

defendant were to modify the terms of its subscriptions, was sufficient to show likelihood of future injury).

Furthermore, the Court joins numerous other courts within this circuit in rejecting BarkBox's second argument. To adopt the conception of standing BarkBox proposes would "defeat the goals of the state legislature to protect both consumers and competitors… [by allowing] defendants to continue their deceptive conduct," because a "plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter." *Ingalls*, 2017 WL 3021037 at *6.

### iii. The availability of damages under the CLRA does not preclude Plaintiff's claims for equitable restitution.

Lastly, BarkBox argues that Plaintiff cannot seek equitable restitution under the UCL because she could have sought damages under her CLRA claim instead. [MTD at 18, 19]. BarkBox relies on the Ninth Circuit's holding in *Sonner v. Premier Nutrition Corp*. that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d 834, 844 (9th Cir. 2020). Thus, a plaintiff in federal court "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL [or] CLRA." *Id.*

However, a legal remedy is only "adequate" for this purpose unless it is "equally" as "prompt[,] certain[,] and in other ways efficient" as the equitable remedy proposed. *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021), citing *Sonner*, 971 F.3d at 844 n.8. As explained in her opposition brief, Plaintiff's CLRA claim includes more "stringent elements" than her UCL claim, such that she may demonstrate her right to restitution under the UCL but fall short of establishing her right to damages under the CLRA. [MTD Opp. at 27-28]. The Court concludes that Plaintiff has demonstrated, for

the purposes of this early stage of litigation, that she lacks an adequate remedy at law and may proceed with her claims for equitable relief. *See Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1008-09 (N.D. Cal. 2020).

Having found Plaintiff's factual allegations in support of her UCL and CLRA claims sufficient, and rejecting BarkBox's alternative procedural grounds for dismissal, the Court **DENIES** BarkBox's motion to dismiss Plaintiff's second and third causes of action.

## IV. CONCLUSION

For the reasons set forth above, BarkBox's motion to compel arbitration is **DENIED**. [Dkt. 18]. BarkBox's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. [Dkt. 17]. Plaintiff is directed to file her amended complaint, including as an exhibit a redlined version reflecting all changes, on or before **Friday, October 13, 2023**.

**IT IS SO ORDERED.**

Dated: October 6, 2023

SUNSHINE S. SYKES
United States District Judge